**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRITTANY SHAW,** | : |
| **Plaintiff** | : |
| | : **CIVIL ACTION NO. 3:17-947** |
| | : |
| **v.** | : |
| | : **(JUDGE MANNION)** |
| **USAA CASUALTY** | |
| **INSURANCE COMPANY,** | : |
| **Defendant** | : |

**MEMORANDUM**

Pending before the court is defendant USAA Casualty Insurance Company's motion for partial summary judgment, (Doc. 12), pursuant to Fed.R.Civ.P. 56(c), with respect to Count II of the complaint, bad faith. Upon review, and finding that a reasonable jury could not conclude that the defendant acted in bad faith thereby violating Pennsylvania's bad faith statute, 42 Pa.C.S. §8371, the defendant's motion will be **GRANTED**.

## I.     BACKGROUND

The plaintiff, Brittany Shaw, filed the instant action in the Court of Common Pleas of Lackawanna County on April 20, 2017. On May 30, 2017, the defendant timely removed the action to this court based upon diversity jurisdiction. (Doc. 1). An answer to the complaint with affirmative defenses was filed by defendant on June 12, 2017. (Doc. 4).

After the completion of discovery, the defendant filed the instant motion

for partial summary judgment, (Doc. 12), on January 31, 2018, along with a statement of material facts, supporting exhibits, (Docs. 13-18), and a supporting brief, (Doc. 17). The plaintiff filed a brief in opposition to the defendant's motion for partial summary judgment on February 27, 2018, (Doc. 20), and a response to defendant's statement of material facts with exhibits, (Doc. 19). On March 13, 2018, the defendant filed a reply brief. (Doc. 21).

This court has diversity jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §1332.


II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there

2

is a genuine issue for trial." Anderson, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (holding that a court may not weigh the evidence or make credibility determinations). The court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also* Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial."

*Celotex Corp., 477 U.S. at 322-23*; *Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)*.

## III.    MATERIAL FACTS

In its motion, the defendant seeks summary judgment only as to the bad faith claim, Count II. In support of its motion, the defendant has submitted a statement of material facts, with supporting exhibits, and the plaintiff responded to it and submitted exhibits. In large part, plaintiff agrees with the facts stated by the defendant.

On March 8, 2012, plaintiff, while a pedestrian, was involved in a motor vehicle accident in Moosic, Pennsylvania. Specifically, plaintiff was crossing the street in front of the preschool where she worked, when she was struck by a Nissan Infiniti owned and operated by Laurie Kolatis-Mecca. Plaintiff sustained bodily injuries from the accident. At the time of the accident, Kolatis-Mecca was insured under a motor vehicle insurance policy issued by State Farm Insurance Company. The State Farm Policy provided bodily injury liability limits in the amount of $100,000. At the time of the accident, plaintiff was the named insured on an Auto Insurance Policy, Number 018949213C 71025, which was issued by defendant. This policy provided Underinsured Motorists Bodily Injury Coverage with limits of $100,000/$200,000 per person/per accident ("UIM limits").

Following the accident, plaintiff filed a bodily injury claim against

Kolatis-Mecca under her State Farm policy. Subsequently, plaintiff filed an action against Kolatis-Mecca in the Lackawanna County Court of Common Pleas, at No. 4871-CIVIL-2013. Eventually, plaintiff settled her bodily injury claim against Kolatis-Mecca for $50,000 of the $100,000 State Farm policy liability limits. She also signed a Release of all claims against Kolatis-Mecca.

On February 11, 2014, plaintiff submitted a claim for UIM benefits under her policy with defendant. Defendant then initiated an investigation and adjustment of plaintiff's claim for UIM benefits. Defendant's claims log as well as the records of communications between defendant and plaintiff's counsel document defendant's handling of plaintiff's UIM claim. (Doc. 12-5, Exs. 4, 5). However, in response plaintiff alleges that:

> [Defendant] did not fully investigate nor revise in any way its initial assessment despite Plaintiff submitting treating Doctor's Medical Records, Economic Expert Report and proposed Complaint in January 2017, (Plaintiff's Motion Exhibit "A" attached), but rather continued to send out its routine "30 day" letters, and did not review or revise its initial evaluation as set forth in USAA's letters, and the claim notes/log of January, February, March and April, 2017, (Plaintiff's Motion Exhibit "B" attached). [Defendant] ignored the Plaintiff's expert submissions (Plaintiff's Motion Exhibit C and D attached) and thus requiring a filing of suit on April 20, 2017.

During its investigation, defendant determined that the overall value of plaintiff's liability claim against Kolatis-Mecca did not exceed the $100,000 liability limits in effect under Kolatis-Mecca's State Farm policy. Plaintiff contends that defendant determined the overall claim value before it received

her treating doctor's report and her economic report. Plaintiff also states that defendant then failed to revise its initial valuation despite her reports.

Unable to resolve their dispute as to the valuation issue, plaintiff filed the instant action against defendant asserting her two claims, contract/UIM claim and statutory insurance bad faith claim. With respect to the second claim, plaintiff essentially alleges that defendant acted outrageously and in bad faith in its handling, investigation, and adjustment of her UIM claim under her policy with defendant.

## IV.   DISCUSSION

There is no question that plaintiff and defendant dispute the overall value of her underlying liability claim against Kolatis-Mecca because if it did not exceed the $100,000 State Farm policy limit, then plaintiff is not entitled to any money under her UIM coverage with defendant. The question is whether plaintiff has sufficiently demonstrated that defendant acted in bad faith, by clear and convincing evidence, to overcome defendant's motion.

Pennsylvania's insurance bad faith statue provides:

[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%; (2) Award punitive damages against the insurer; (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. §8371.

In order to satisfy the requirements of §8371, the insured must demonstrate by clear and convincing evidence that the insurer (1) "lacked a reasonable basis for denying benefits;" and (2) "knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky v. Prudential Prop. and Cas. Co., 649 A.2d 680, 688 (Pa.Super.Ct. 1994)). "'[P]roof of an insurance company's motive of self-interest or ill-will is not a prerequisite to prevailing in a bad faith claim[,]' though such evidence is probative of the second prong of the bad faith test." Berg v. Nationwide Mutual Ins. Co., Inc., --- A.3d ---- (Pa. Super. 2018), 2018 WL 1705274 (April 9, 2018) (quoting Rancosky v. Washington Nat'l Ins. Co., ——— Pa. ———, 170 A.3d 364, 365 (2017)). Mere negligence, however, is not sufficient to establish a bad faith claim. *See* Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994). "Rather, it is the unreasonable and intentional or reckless denial of benefits which is the essence of a bad faith claim." Myers v. State Farm Mut. Auto. Ins. Co., 2017 WL 3891968, *2 (E.D.Pa. Sept. 6, 2017) (citation omitted). Claims of bad faith are fact specific and depend on the conduct of the insurer toward its insured. Condio v. Erie Ins. Exch., 899 A.2d 1136, 1143 (Pa.Super.Ct. 2006). An insured must meet the heightened standard of clear

7

and convincing evidence, which "is the highest standard of proof for civil claims", to establish a claim of bad faith. Smith v. State Farm Mut. Auto. Ins. Co., 2012 WL 508445, at \*3 (E.D.Pa. Feb.16, 2012); Berg, --- A.3d ----, 2018 WL 1705274, \*4. This standard requires the insured to "provide evidence 'so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'" Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 179 (3d Cir. 2011) (quoting Bostick v. ITT Hartford Grp., 56 F.Supp.2d 580, 587 (E.D.Pa. 1999)).

"The 'clear and convincing' standard requires that the plaintiff show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'" J.C. Penny Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004) (quoting Bostick v. ITT Hartford Group, Inc., 56 F.Supp.2d 580, 587 (E.D.Pa. 1999)). The plaintiff's burden is equally high at the summary judgment stage of litigation and she must point to evidence that meets this heavy evidentiary requirement. J.C. Penny, 393 F.3d at 367 (citing Kosierowski v. Allstate Ins. Co., 51 F.Supp.2d 583, 588 (E.D.Pa. 1999)). "A reasonable basis is all that is required to defeat a claim of bad faith." Id. Some examples of bad faith are a frivolous or unfounded refusal to pay, failure to investigate the facts, failure to communicate with the insured, failure to engage in settlement negotiations, and unreasonable delay. *See* Katta v. Geico Ins. Co., 2013, WL

275529, *7 (W.D.Pa. Jan. 24, 2013) (citations omitted). While the insurer's duty of good faith and fair dealing does not allow it to protect its own interests at the expense of its insured's, an insurer also need not "submerge its own interests in favor of those of its insured, and investigating and litigating a claim does not constitute bad faith." *Id.*

"Courts have also recognized the potential existence of bad faith in situations where there has not been an outright refusal to pay benefits, such as a lack of investigation, failure to communicate with an insured, or delay." Ridolfi v. State Farm Mutual Automobile Insurance Company, 146 F.Supp.3d 619, 623 (M.D.Pa. 2015) (citations omitted). Thus, "a plaintiff must allege that a defendant had no reasonable basis for the delay in coverage, and that the defendant delayed coverage with knowing or reckless disregard for the unreasonableness of its action." Id. (citations omitted).

Defendant argues, in its partial motion for summary judgment, that the plaintiff has failed to adequately establish a claim of bad faith pursuant to Pennsylvania's insurance bad faith statute. Defendant points out in its motion that plaintiff failed to support her bad faith claim with an expert report. Defendant also states that plaintiff has not produced any clear and convincing evidence of bad faith conduct on its part, and that the evidence shows it handled plaintiff's UIM claim properly since it had a legitimate dispute regarding the total value of plaintiff's underlying liability claim against

Kolatis-Mecca. Defendant contends that its claims log and many records, including the medical, employment, and social media records it obtained and reviewed during its claims handling, both before and after plaintiff's lawsuit, demonstrate the extent of its investigation. (Doc. 12-5, Exs. 4, 5, 6, Doc. 12-6, Ex. 10, Docs. 13-16).

Defendant also states that it did not ignore the medical and economic reports, including wage loss expenses, plaintiff submitted, and that it considered all of her documentation. Nonetheless, defendant contends that it had a reasonable basis to conclude that the total value of plaintiff's claim did not exceed the $100,000 liability limits of Kolatis-Mecca's State Farm policy. Defendant also points out that even though plaintiff now alleges that the overall value of her losses and damages caused by the accident exceed $100,000, she settled her lawsuit against Kolatis-Mecca for $50,000.

As such, defendant maintains that the accident was not caused by an underinsured driver, i.e., Kolatis-Mecca, and that it properly denied plaintiff's UIM claim. Defendant argues that based on its thorough investigation, it determined that the value of plaintiff's overall claim did not exceed $100,000, and found that her "accident-related losses and damages had therefore not been caused by the acts or omissions of an underinsured driver." Defendant also states that this dispute as to the value of plaintiff's underlying claim continues to the present day and, that since it properly investigated and

10

handled plaintiff's UIM claim, there is no clear and convincing evidence of bad faith on its part.

Plaintiff alleges that the accident caused her to become "permanently lame, sore, and disabled," and that she "sustained severe and serious physical and mental injury, pain, and great discomfort." She also alleges that she suffered "permanent limitations as a result of the pain, discomfort, and inconvenience to her back, neck and body." Plaintiff argues that her evidence shows defendant failed to conduct any review or investigation after she submitted her expert reports of Dr. Kerrigan, (Doc. 19-3), and of CPA Yanushefsky, (Doc. 19-4), in December 2016 and January 2017, and that defendant "never revised or reanalyzed its early initial evaluation" that her claim was not worth more than the $100,000 primary coverage under the State Farm policy.

Plaintiff also states that her bad faith claim can be established without an expert report opining that defendant acted in bad faith. Further, plaintiff contends that even though defendant did submit an expert report opining that defendant did not act in bad faith, the court does not have to give it any weight for present summary judgment purposes.

Regarding an expert report, courts have allowed an expert's analysis of facts that the expert believed showed that the defendant deviated (or did not deviate) from insurance industry standards, but courts have not allowed the

expert to offer an opinion on the ultimate issue in the case, i.e., whether the defendant insurance company acted in bad faith. Further, courts have not allowed expert opinions regarding subjective issues, such as the insurance company's state of mind. *See* Mirarchi v. Seneca Specialty Ins. Co., 2013 WL 1187065, *5-*6 (E.D.Pa. March 22, 2013) (citations omitted). Thus, the court will not consider any expert opinion on the ultimate legal issue in this case as to whether defendant acted in bad faith. Nor does the court agree that a bad faith claim requires expert testimony. *See also* Dattilo v. State Farm Ins. Co., 1997 WL 644076, at *5 (E.D.Pa. Oct.17, 1997) ("Bad faith is a legal concept of general application which does not require that scientific, technical or specialized knowledge be presented to assist the trier of fact."); Allstate Prop. & Cas. Ins. Co. v. Vargas, 2008 WL 4104542 (E.D.Pa. Aug.29, 2008) (court excluded expert report of defendant insofar as the expert opined as to the ultimate legal issue of whether the facts presented constituted bad faith).

Here, however, the court finds that plaintiff has failed to establish, by clear and convincing evidence, that defendant acted in bad faith with respect to the handling of her UIM claim. Rather, the extensive record indicates that defendant had reasonably attempted to gather all of the information necessary to properly evaluate the value of plaintiff's underlying claim against the tortfeasor, and that as a result of its investigation, it had a reasonable basis to conclude that plaintiff's underlying claim did not exceed $100,000.

The record demonstrates that plaintiff suffered back contusions, acute lower back and lumbar pain, as well as neck pain and a cervical sprain after the accident in which Kolatis-Mecca's car was going less than 15 m.p.h. Plaintiff required only limited and conservative medical care. (Doc. 12-5, Exs.4, 6, Doc. 13, Exs. 10 and 12, Doc. 14, Ex. 22). Plaintiff had left forearm and wrist pain after the accident but no fracture and her head MRI was normal. (Doc. 14, Ex. 22). Plaintiff was able to return to work less than a week after the accident (Docs. 15-16, Ex. 15).

The records show that plaintiff's treatment included 3 courses of physical therapy, from March 30, 2012 through May 2012, July 2012 through August 2012, and November 2016 through December 2016. She also received 10 sessions of chiropractic care in August 2014.

Thus, plaintiff's medical records indicated that she suffered soft tissue injuries as a result of the accident, including cervical and lumbar sprain/strain, but that her injuries gradually improved after the accident and they have only required conservative treatment.(Doc. 12-5, Ex. 6).

Moreover, plaintiff alleges that the accident also caused her to suffer a loss of earnings, future earnings, and earning capacity, and that these losses have a value in excess of the $100,000 liability limits under the State Farm policy.

As part of its investigation, defendant also reviewed plaintiff's education

and employment records. The records indicated that plaintiff was able to continue her education and she was able to obtain a nursing job after the accident. The evidence further shows that plaintiff did not request and receive any physical accommodations or limitations by her employer. (Exs. 15, 17, 18, 19). Plaintiff's three physical capacity evaluations performed by Dr. Kerrigan, which she submitted, also reflected continuing improvement of her conditions after the accident. (Doc. 14, Ex. 20).

Defendant also reviewed plaintiff's October 2012 physical for entrance to nursing school which showed no acute distress, no reference to physical limitations, and no reference to the March 2012 accident. In March 2014, plaintiff graduated from Career Technology Center in its LPN program and she received a perfect attendance certificate of achievement. (Doc. 14, Ex. 17). In April 2014, plaintiff applied for a job with Regional Hospital in Scranton and was hired in June 2014. She worked in the hospital through December 2015. (Doc. 14, Ex. 18, Doc. 14, Ex. 22). In her hospital records, there was no reference to plaintiff having any physical limitations. Nor was there any reference to the accident. She also did not make any request for disability-related accommodations at the hospital. Plaintiff's October 2014 and April 2015 Performance Reviews at Regional Hospital contained no reference to her having any physical limitations or inability to perform tasks even though the physical requirements of her job were demanding, including continuous

standing and continuous lifting of more than 50 pounds, frequent carrying up to 50 pounds and continuous pushing up to 300 pounds. (Exs. 4, 6, 17, 18, 19, Doc. 14, Ex. 22).

In her deposition, plaintiff also stated that she began a new career as a school nurse. (Docs. 15-16, Ex. 15, Doc. 14, Ex. 19). Specifically, plaintiff began working as a substitute school nurse in November 2016 and she still had this job through 2017. Notably, she did not request any special accommodations from the school for any physical conditions. (Doc. 14, Ex. 22).

Defendant did, in fact, review plaintiff's economic analysis, i.e., the forensic accounting report prepared by Joseph Yanushefsky, CPA, (Doc. 14, Ex. 21), and found that it was speculative and not supported by the record which showed that plaintiff was able to work without limitations. Defendant also considered the medical records which plaintiff produced to support her claim, including the August 2013, July 2016 and September 2017 physical capacity evaluations of James J. Kerrigan, M.D., neurologist. However, defendant concluded that these evaluations did not show the severity and permanency of her injuries which she alleged. Defendant also states that plaintiff's records were speculative regarding to her injuries and limitations since they referred to "probabilities" and "possibilities." Defendant further states that plaintiff's records also indicated "a consistent pattern of recovery

and functional improvement." (Doc. 14, Exs. 20 & 22). The court reviewed Dr. Kerrigan's physical capacity evaluation forms and, as defendant contends, they show plaintiff's condition was improving and that her limitations were not as severe and permanent as plaintiff alleged.

Plaintiff also alleged that the accident caused her to suffer a loss of everyday pleasures and enjoyment of life. However, the evidence of plaintiff's daily activities after the accident, including social media posts and photos, showed that plaintiff was very active which further belie her claims that the accident caused her to be "permanently lame, sore, and disabled", and caused "permanent limitations." (Doc. 13, Ex. 12). Included as evidence which defendant considered were photographs of plaintiff after the accident showing her socializing, dancing, walking through Times Square, and wearing stilettos. (Doc. 13, Ex. 12 Doc. 16, Ex. 15).

Thus, defendant states that it reviewed all of plaintiff's records, and based on the evidence and its investigation, it did not find that the value of plaintiff's underlying claim was more than $100,000. Defendant also states that simply because it reached a different conclusion than plaintiff's claim that her losses and damages caused by the accident have an overall value in excess of $100,000, does not amount to clear and convincing evidence of bad faith with respect to its handling of her UIM claim.

"A plaintiff in a bad faith claim must show that the outcome of the case

would have been different if the insurer had done what the insured wanted done." [Blaylock v. Allstate Ins. Co., 2008 WL 80056, *13 (M.D.Pa. Jan. 7, 2008)](citing [Zappile v. AMEX Assurance Co., 928 A.2d 251, 262 (Pa.Super. 2007)](). The court does not find that defendant ignored plaintiff's medical and damages reports as she alleges, and that defendant did properly consider the report from the forensic accountant that she submitted. Nor does the court find that defendant handled plaintiff's UIM claim without proper investigation and expert analysis. In fact, defendant's claims log reflect entries that show the above referenced documents and evidence plaintiff submitted were received and reviewed during its investigation. (Doc. 12-5). Defendant's letters to plaintiff also indicated that it reviewed and considered her documents, including the forensic accounting report prepared for her by Joseph Yanushefsky, CPA, (Doc. 14, Ex. 21), and stated its finding that the documents failed to show her overall claim had a value of more than $100,000. Further, the evidence shows that defendant promptly acknowledged, investigated, and handled plaintiff's UIM claim. The evidence also shows that during the process of handling plaintiff's claim, defendant was in regular contact with her attorney, and that it timely requested any updated medical and employment records, tax returns, wage/salary verifications, confirmation regarding the liability limits in effect under the State Farm Policy, as well as other documents required for its evaluation of plaintiff's UIM claim.

(Doc. 12-5).

As such, the court finds that plaintiff had failed to produce clear and convincing evidence to show that defendant acted in bad faith with respect to its handling of her UIM claim.

Finally, insofar as plaintiff contends that the defendant handled her UIM claim and determined that the $100,000 liability limits under the State Farm Policy had not been exceeded, "without medical expert review, examination or analysis," the undisputed evidence shows that defendant sought medical expert review on two occasions. First, since plaintiff was demanding the full UIM limits under her policy with defendant before she filed the instant action, defendant had plaintiff's medical records reviewed by Holly Dykstra, R.N., when there were questions about the nature, extent, and permanency of plaintiff's alleged injuries from the accident. On June 22, 2015, Nurse Dykstra prepared a report in which she concluded that plaintiff had suffered cervical and lumbar sprain/strain as a result of the accident, and that they were injuries which generally resolve within a period of four to six weeks with or without intervention because soft tissue injuries are self-limiting in nature. (Doc. 12-5, Ex. 6).

After plaintiff filed the instant action, defendant continued to review additional records that plaintiff submitted in support of her claim for full UIM limits and it requested another medical expert review, namely, an

Independent Medical Examination and Report by Stephen L. Fedder, M.D. Following his October 24, 2017 examination of plaintiff and a complete review of plaintiff's medical records, Dr. Fedder concluded that plaintiff had suffered "physiologically minor injuries" of cervical strain and back contusion from the accident. He also found that plaintiff "did not sustain a traumatic brain injury, spinal cord injury, spine skeletal disruption or traumatic radiculopathy" from the accident. (Doc. 14, Ex. 22).

In his IME, Dr. Fedder also noted that plaintiff was able to drive for day trips to a beach from her apartment in June 2017, that plaintiff admitted she ran a mile or two since the accident and, that she ran/walked in a 5 kilometer (3.1 miles) race in May 2017. (Doc. 14, Ex. 22). Dr. Fedder also noted that plaintiff was able to drive 2.5 hours to his office with just one stop, and that she drives her car daily without any problems. Dr. Fedder further indicated that plaintiff takes Advil 2-3 days per week and that she supplements it with Mobic. She also walks for exercise and was able to walk one mile. Dr. Fedder concluded that plaintiff's physical activities and her prior job in the hospital were the causes of any current back pain.

Finally, Dr. Fedder found, to a reasonable degree of medical certainty, that plaintiff had recovered from her injuries from the accident and that she did not require any further medical care for any injuries related to the accident. He also stated that plaintiff had no vocational restrictions. (Doc. 14,

19

Ex. 22).

In his addendums to his IME, Dr. Fedder states how the record, including plaintiff's admissions, show that she is capable of significant physical capacity, and that the limitations Dr. Kerrigan found plaintiff had in his September 2017 evaluation "are in stark contrast to the lifting and other activities involved in the course of [plaintiff's] job as an LPN." Dr. Fedder also found some of Dr. Kerrigan's limitations unfounded in light of the fact that plaintiff did not request any physical restrictions from her employers after the accident. (Doc. 15 at 115-118).

Thus, the court finds that defendant's conduct did not amount to bad faith. Indeed, there is no legal requirement that insurance companies conduct perfect investigations. "An insurance company simply must show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." Krisa v. Equitable Life Assur. Soc., 113 F.Supp.2d 694, 704 (M.D.Pa. 2000)(quoting Cantor v. The Equitable Life Assur. Soc'y, 1999 WL 219786, *3 (E.D.Pa. April 12, 1999)).

Upon review, plaintiff has not established, by clear and convincing evidence, that defendant acted in bad faith with respect to its handling of her UIM claim. Rather, the record only shows that this case simply represents a disagreement among the parties as to the valuation of plaintiff's UIM claim. This does not amount to bad faith. *See* Miezejewski v. Infiniti Auto Ins. Co.,

2014 WL 241966 (M.D.Pa. Jan. 22, 2014), *aff'd* 609 Fed.Appx. 69 (3d Cir. 2015). As such, a reasonable jury could not find that defendant lacked a reasonable basis for denying plaintiff UIM benefits under her policy. Nor could a reasonable jury find that defendant knew it lacked a reasonable basis or that it recklessly disregarded such knowledge. Thus, summary judgment is appropriate for defendant on Count II, the bad faith claim.

## V.    CONCLUSION

In light of the foregoing, the defendant's motion for partial summary judgment, (Doc. 11), will be **GRANTED**. Judgment will be entered in favor of defendant and against plaintiff with respect to Count II of her complaint, (Doc. 1). An appropriate order shall issue.[1]


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: May 11, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0947-01.wpd

---

[1]By separate order, the court will schedule the final pre-trial conference regarding plaintiff's remaining UIM/contract claim since the time to file dispositive motions has expired.

21